# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORISONS UNLIMITED and HORISONS UNLIMITED HEALTH CARE,<br><br>                    Plaintiffs,<br><br>          v.<br><br>SANTA CRUZ-MONTEREY-MERCED MANAGED MEDICAL CARE COMMISSION d/b/a CENTRAL CALIFORNIA ALLIANCE FOR HEALTH and THE COUNTY OF MERCED,<br><br>                    Defendants. | 1:14-CV-00123-LJO-MJS<br><br>**ORDER ON MOTIONS TO DISMISS, MOTION FOR SANCTIONS**<br>(Docs. 20, 23, and 32) |

## PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

## INTRODUCTION

Plaintiffs Horisons Unlimited and Horisons Unlimited Health Care (collectively, "Horisons" or

1

1  "Plaintiffs") bring this action for violations of the Sherman Act, 15 U.S.C. §§ 1, 2, 42 U.S.C. § 1983,

2  and California antitrust and anti-discrimination law as well as for breach of contract and for mandamus

3  against Defendants Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central

4  California Alliance for Health ("Alliance") and the County of Merced ("the County") (collectively,

5  "Defendants").   Before the Court are the County and Alliance's motions to dismiss Plaintiffs'

6  complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and lack of subject matter

7  jurisdiction pursuant to Rule 12(b)(1) as well as the County's motion for sanctions pursuant to Fed. R.

8  Civ. P. 11.  For the reasons discussed below, the Court GRANTS in part the County's and Alliance's

9  motions to dismiss Plaintiffs' complaint, DENIES the County's motion for sanctions, and ORDERS

10  the joinder of Golden Valley Health Centers as a defendant in this case.

11                                         **BACKGROUND**

12      **A.    Facts**[1]

13          Medi-Cal was enacted as California's Medicaid program.  Prior to January 1, 2014, individuals

14  who qualified for Medi-Cal generally had income not exceeding 100% of the federal poverty level.  As

15  of December 2013, Merced County's Medi-Cal enrollment was approximately 80,000 individuals.  As

16  of January 1, 2014, individuals with income not exceeding 138% of the federal poverty rate may

17  qualify for Medi-Cal benefits.  Medi-Cal enrollment in Merced is expected to increase by another

18  18,000 individuals as a result.

19          Plaintiffs are California corporations licensed by the state to provide primary care services as

20  certified Rural Health Clinics.  Horisons is a non-denominational religious healthcare provider and

21  offers pastoral services at its clinics.  Horisons operates three clinics in Merced County, located in Los

22  Banos, Livingston, and Gustine.   Horisons has employed 75 to 80 employees and contractors,

23  including physicians, physician's assistants, nurse practitioners, and dentists, to service their clinics.

24  Plaintiffs' clinics have served Medi-Cal beneficiaries and the "working poor" who do not qualify for

25  public assistance in Merced since 2004.

26          California's Department of Health Care Services ("DHCS") generally requires most Medi-Cal

27

28  [1] The background facts are derived from the complaint.  The Court accepts the factual allegations as true for purposes of this motion.  *Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

2

beneficiaries to be assigned to and enrolled in a Medi-Cal managed care plan unless one is unavailable where they reside.  In 2008, the governing body of the County established Alliance as the sole Medi-Cal managed care plan for the county of Merced.  All healthcare providers seeking to provide services to Medi-Cal beneficiaries in Merced are thus required to contract with Alliance, and all Medi-Cal eligible individuals in Merced are thus required to be members of Alliance to receive Medi-Cal benefits.

Horisons entered into a contract with Alliance effective January 1, 2011.  The contract states that providers must be credentialed by Alliance in order to render healthcare services to Alliance members and outlines the credentialing process.  Horisons alleges that Alliance's Peer Review and Credentialing Committee meets infrequently and can take up to six months to complete credentialing.  The contract further states that providers with "clean" records who are new to Alliance are eligible for provisional credentialing subject to the recommendation and approval of Alliance officers.

Alliance refused to temporarily credential any of Horisons' providers.  Horisons' providers are otherwise licensed and qualified.  Horisons allowed its providers to render services to patients pending Alliance's completion of credentialing.  Horisons alleges it did so in accordance with the Rural Health Center Policy and to meet patient needs.

As a result, on or around December 20, 2013, Alliance stopped new enrollments of Medi-Cal beneficiaries at Horisons and threatened to terminate Horisons' contract with Alliance.  Alliance also refused to inspect a new Horisons clinic site and to credential a Horisons chiropractor.  In addition, for the year preceding Horisons' filing of its complaint, Alliance has threatened to terminate Horisons' contract unless the annual number of visits for Horisons' patients average no more than 3.2.  Horisons alleges that Merced County, including its patients, suffers from higher incidences of poverty, obesity, asthma, and diabetes than California generally and require more frequent visits to Horisons' clinics.  Because of Horisons' threats, Horisons has not billed Alliance for a number of patient visits to prevent the average number of patient visits from exceeding 3.2.

Horisons' main competitor for Medi-Cal patients in Merced County is Golden Valley Health Centers ("Golden Valley").  The Deputy Chief Executive Officer of Golden Valley has been a member of Alliance's governing body at all relevant times.  Horisons alleges that Alliance allows Golden

Valley to use temporarily credentialed professional providers who are similarly situated to Horisons' professional providers without any adverse consequences to Golden Valley.  Horisons further alleges that the County and Alliance conspired with Golden Valley to monopolize Medi-Cal managed healthcare services in Merced County through elimination of any competing managed care plan and of any competing healthcare provider.

Horisons alleges that it has lost and will lose millions of dollars due to Defendants' actions, including the loss of $350,000 per month due to non-enrollment of new members, and is threatened with imminent bankruptcy.  Horisons seeks injunctive relief, compensatory damages, attorney's fees, and a writ of mandamus.

**B.  Procedural History**

On January 28, 2014, Horisons filed a complaint for antitrust violations, anti-discrimination violations, and breach of contract against Defendants and moved for a temporary restraining order ("TRO").  (Doc. 1).  On January 29, 2014, this Court denied Horisons' motion for a TRO.  (Doc. 10). The County filed a motion to dismiss Horisons' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on March 18, 2014.  (Doc. 20).  Alliance filed a motion to dismiss Horisons' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on March 20, 2014.  (Doc. 23).  Horisons filed an opposition to Defendants' motions on April 14, 2014 and the Defendants filed replies on April 21, 2014.  (Docs. 26, 34, 35).  The County filed a motion for sanctions against Horisons pursuant to Fed. R. Civ. P. 11 on April 17, 2014.  (Doc. 32).  Horisons filed an opposition on May 1, 2014, and the County filed a reply on May 7, 2014.  (Docs. 37, 39).

On May 12, 2014, this Court ordered Defendants to file supplemental briefing on the statutory immunity defense they raised as to Horisons' Sherman Act claim.  (Doc. 40).  Defendants filed supplemental briefing on May 16, 2014, and Horisons filed supplemental briefing on May 22, 2014. (Docs. 43, 43, 44).

**DISCUSSION**

**Motions to Dismiss**

**A.  12(b)(1) Lack of Subject Matter Jurisdiction**

Defendants argue that this Court lacks subject matter jurisdiction over Horisons' first cause

4

of action under the Sherman Act §§ 1 and 2.

### 1.      Legal Standard

A motion to dismiss for lack of subject matter jurisdiction determines whether the plaintiff has a right to be in the particular federal court, whereas a motion to dismiss for failure to state a claim is an adjudication as to whether a cognizable legal claim has been stated.  *Trustees of Screen Actors Guild– Producers Pension & Health Plans v. NYCA*, Inc., 572 F.3d 771, 775 (9th Cir. 2009) (quoting 5B Wright & Miller, Federal Practice and Procedure § 1350 (3d ed. 2004)).  A federal court is a court of limited jurisdiction, and may adjudicate only those cases authorized by the Constitution and by Congress.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction.  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.  *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981).

"A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citing *Land v. Dollar*, 330 U.S. 731, 735 & n. 4 (1947); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890–892 (3rd Cir. 1977); *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130–1131 (2nd Cir. 1976)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

"If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Cervantez v. Sullivan*, 719 F.Supp. 899, 903 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229 (9th Cir. 1992).  "The factual allegations of the complaint are presumed

to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id*.

### 2.   Analysis

The County argues that this Court lacks subject matter jurisdiction over Horisons' Sherman Act claim because Horisons fails to allege the involvement of interstate commerce.  Alliance states that it moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) as well as 12(b)(6), but its briefing only argues that Horisons fails to state a claim as to each of its causes of action pursuant to Fed. R. Civ. P. 12(b)(6).  Therefore, this Court construes Alliance's motion to dismiss as brought under Fed. R. Civ. P. 12(b)(6) only, and limits this Court's 12(b)(1) analysis to the County's arguments.

Horisons alleges that the conduct of the County and Alliance affects interstate commerce because it "limits and/or denies access to crucial health services for persons moving through interstate commerce who pass through or relocate to Merced County[,] frustrates the movement of licensed healthcare professionals for professional experience and training through interstate commerce[,] frustrates the establishment of rural health services that the Rural Health Clinics Act intended to foster, and limits the interstate movement of goods, services and financial transactions from, into and out of the County of Merced that certified Rural Health Clinics and other primary care clinics require."  (Doc. 1 pp. 12-13).  The County argues that "[a]ll of Plaintiffs' business is alleged to have occurred in Merced County," and that "[n]o facts are alleged which occurred in, or affect, interstate or international commerce."  (Doc. 20 p. 6).  Specifically, the County contends that Horisons' above allegations are "conclusory" and "fail[] to demonstrate a plausible substantial affect[sic] on interstate commerce."  *Id*. at p. 7.

"For there to be a Sherman Act violation, the defendant's business activities must be 'in restraint of trade or commerce among the several States.'"  *United States v. ORS, Inc*., 997 F.2d 628, 629 (9th Cir. 1993) (quoting 15 U.S.C. § 1).  "This requisite relationship to interstate trade or commerce is not only an element of the alleged antitrust offense, but also a necessary jurisdictional requirement."  *Id*. (citing *McLain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 242 (1980).  However, "[i]t is settled that the [Sherman] Act encompasses far more than restraints on trade that are motivated by a desire to limit interstate commerce or that have their sole impact on interstate

6

commerce." *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 743 (1976). "'[W]holly local business restraints can produce the effects condemned by the Sherman Act.'" *Id.* (quoting *United States v. Employing Plasterers Ass'n*, 347 U.S. 186, 189 (1954). Anti-competitive conduct may covered by the Sherman Act even if its impact on interstate commerce is "indirect" or "fortuitous." *Id.* at 744. To establish federal jurisdiction in this case, Horisons' allegations must show Defendants' conduct "'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." *McLain*, 444 U.S. at 246 (quoting *Rex Hospital Trustees*, 425 U.S. at 745).

Here, Horisons alleges that, if Defendants' monopoly continues and forces Horisons to cease operations, Horisons' purchases of out-of-state supplies and services and other interstate financial transactions as well as its recruitment of out-of-state professionals to service and receive training at its clinics would cease as well. Horisons further alleges that it would no longer be able to serve nonresident patients or patients who relocate to Merced County from another state. The Supreme Court has found similar allegations as sufficient to establish a "substantial effect" on interstate commerce under the Sherman Act. *See*, *Trustees of Rex Hosp.*, 425 U.S. at 744 ("The complaint, fairly read, alleges that if respondents and their coconspirators were to succeed in blocking petitioner's planned expansion, petitioner's purchases of out-of-state medicines and supplies as well as its revenues from out-of-state insurance companies would be thousands and perhaps hundreds of thousands of dollars less than they would otherwise be."); *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 329-330 (1991) (It seems clear, however, that these services are regularly performed for out-of-state patients and generate revenues from out-of-state sources."). Moreover, the bankruptcy of Horisons as a Medicaid provider through Medi-Cal necessarily would affect commerce. *See*, *Summit Health*, 500 U.S. at 327 ("The provision of ophthalmological services affects interstate commerce because both physicians and hospitals serve nonresident patients and receive reimbursement through Medicare payments."); *United States v. Girod*, 646 F.3d 304, 315 (5th Cir. 2011) ("Medicaid [] is a federally funded program that indisputably affects interstate commerce.").

Further, as the Ninth Circuit has recognized, the Supreme Court "somewhat liberalized" the Sherman Act interstate commerce test in *Summit Health*. *Tice v. Hoff*, 29 F.3d 634 (9th Cir. 1994). There, the Supreme Court instructed that "[t]he competitive significance of [plaintiff's] exclusion from

7

the market must be measured, not just by a particularized evaluation of his own [business,] but rather, by a general evaluation of the impact of the restraint on other participants and potential participants in the market from which he has been excluded." *Summit Health*, 500 U.S. at 332.  "For if a violation of the Sherman Act occurred, the case is necessarily more significant than the fate of 'just one merchant whose business is so small that his destruction makes little difference to the economy.'"  *Id.* (quoting *Klor's, Inc. v. Broadway-Hale Stores, Inc*., 359 U.S. 207, 213 (1959).  Here, the alleged monopoly and conspiracy to monopolize the Medi-Cal market in Merced County affect not only Horisons but also any potential participant in the Medi-Cal managed healthcare plan market and in the Medi-Cal healthcare provider market in Merced County.  As the Supreme Court stated, "[i]n cases involving horizontal agreements to fix prices or allocate territories within a single State, we have based jurisdiction on a general conclusion that the defendants' agreement 'almost surely' had a marketwide impact and therefore an effect on interstate commerce."  *Summit Health*, 500 U.S. at 331 (citing *Burke v. Ford*, 389 U.S. 320, 322 (1967)).  Therefore, the exclusion of any and all such participants from the Medi-Cal market in Merced County affects interstate commerce.

Because Horisons sufficiently alleges that Defendants' conduct "as a matter of practical economics" has a "not insubstantial effect on the interstate commerce," the County's motion to dismiss Horisons' first cause of action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is DENIED.  *Rex Hospital Trustees*, 425 U.S. at 745; *McLain*, 444 U.S. at 246.

**B.      12(b)(6) Failure to State a Claim**

Horisons brings federal and state antitrust claims against both Defendants and additional state claims against Alliance.  Specifically, Horisons contends that Defendants violated the Sherman Act and California's Cartwright Act in the first and third causes of action respectively.  Horisons also contends that Alliance deprived Horisons of its constitutional rights in violation of 42 U.S.C. § 1983, discriminated against Horisons in violation of California's Unruh Civil Rights Act, and breached Horisons' contract with Alliance.  Finally, Horisons seeks a writ of mandamus against Alliance under Cal. Code Civ. P. § 1085.

Defendants argue that Horisons fails to state a claim for which relief can be granted as to Horisons' first and third causes of action against them for antitrust violations.  Alliance also argues that

1   Horisons fails to state a claim for which relief can be granted as to the second, fourth, fifth, and sixth

2   causes of action Horisons asserts against Alliance.

3        **1.        Legal Standard**

4        A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of

5   the allegations set forth in the complaint.  A dismissal under Rule 12(b)(6) is proper where there is

6   either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

7   cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In

8   considering a motion to dismiss for failure to state a claim, the court generally accepts as true the

9   allegations in the complaint, construes the pleading in the light most favorable to the party opposing

10  the motion, and resolves all doubts in the pleader's favor. *Sprewell v. Golden State Warriors*, 266 F.3d

11  979, 988 (9th Cir. 2001).

12       To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough

13  facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

14  570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

15  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

16  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability

17  requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

18  (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are merely consistent with a

19  defendant's liability, it stops short of the line between possibility and plausibility for entitlement to

20  relief" *Id*. (citing *Twombly*, 550 U.S. at 557).

21       "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

22  factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

23  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

24  action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  Thus, "bare assertions ...

25  amount[ing] to nothing more than a formulaic recitation of the elements ... are not entitled to be

26  assumed true." *Iqbal*, 129 S.Ct. at 1951.  A court is "free to ignore legal conclusions, unsupported

27  conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual

28  allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation

9

omitted).

Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1106 (7th Cir. 1984)).

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend.  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc*., 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

   **2.    Analysis**

      **i.    Sherman Act**

In its first cause of action, Horisons alleges violations of the Sherman Act against Defendants in two markets – the Medi-Cal managed healthcare plan market in Merced County and the Medi-Cal healthcare services provider market in Merced County.

In California's County Organized Health System ("COHS"), the DHCS contracts with a health plan created by a county's governing body.  The plan then contracts with providers to deliver healthcare services to plan beneficiaries. Alliance is the sole participant in the Medi-Cal healthcare plan market Merced County.  Horisons and Golden Valley participate in the Medi-Cal healthcare provider market in Merced County.

The Court will address Horisons' claims in these two markets separately.

   **1.    Medicaid Managed Healthcare Plan Market in Merced County**

Horisons alleges that the County's establishing of Alliance as the sole Medi-Cal managed care plan is a combination in restraint of trade in violation of Sherman Act § 1 and a monopoly in violation of § 2 because it eliminates competition between managed care plans in Merced County. Alliance and the County argue that each is immune from Sherman Act claims under the state action immunity doctrine.  Alliance argues that it also has immunity under the Local Government Antitrust

Act of 1984.  Both Defendants contend that Horisons fails to allege the essential elements of a Sherman Act claim.  Finally, Alliance and the County argue that each is protected by a statutory exemption in the Social Security Act from antitrust laws.[2]

### a.   Social Security Act Exemption and Antitrust Immunity

The County and Alliance both argue in their respective filings that 42 U.S.C. § 1396u-2(a)(3)(C) provides an exemption for each of them respectively from antitrust laws.[3]

### i.   42 U.S.C. 1396u-2(a)(3)(C)

Section 1396u-2 of 42 U.S.C. Chapter 7, the Social Security Act, contains provisions relating to managed care.  Generally, under § 1396u-2, a state "may require an individual who is eligible for medical assistance under the State plan under this subchapter to enroll with a managed care entity as a condition of receiving such assistance[.]"  42 U.S.C. § 1396u-2(a)(1)(A).  Subparagraph (a)(3)(A) provides that "[a] State must permit an individual to choose a managed care entity from not less than two such entities that meet the applicable requirements of this section, and of section 1396b(m) of this title or section 1396d(t) of this title."  42 U.S.C. § 1396u-2(a)(3)(A).  The provision at issue, subparagraph (3)(C), in relevant part, provides that "[a] State shall be considered to meet the requirement of subparagraph (A) if the managed care entity in which the individual is enrolled is a health-insuring organization which (i) first became operational prior to January 1, 1986, or (ii) is described in section 9517(c)(3) of the Omnibus Budget Reconciliation Act of 1985 (as added by section 4734(2) of the Omnibus Budget Reconciliation Act of 1990)[.]"  42 U.S.C. § 1396u-2(a)(3)(C).  Alliance did not become active prior to January 1, 1986.  Therefore, the relevant inquiry is whether or not Alliance "is described in section 9517(c)(3) of the Omnibus Budget Reconciliation Act of 1985 (as added by section 4734(2) of the Omnibus Budget Reconciliation Act of 1990)[.]"  *Id.*

"Under long established canons of statutory construction, statutes which incorporate other statutes by reference are considered either 'statutes of specific reference' or 'statutes of general reference.'"  *Pearce v. Dir., Office of Workers' Comp. Programs, U. S. Dep't of Labor*, 603 F.2d 763, 767 (9th Cir. 1979).  The Ninth Circuit cites a Seventh Circuit opinion in explaining the distinction:

---

[2] Because the Court finds the defense with regard to the Social Security Act and antitrust immunity to be dispositive, it need not reach the other defenses raised.

[3] The Court ordered and each party filed supplemental briefing on this issue.

1    [W]hen a statute adopts the general law on a given subject, the reference is construed to

2    mean that the law is as it reads thereafter at any given time including amendments

3    subsequent to the time of adoption. This is to be contrasted with adoption by reference of

4    limited and particular provisions of another statute, in which case the reference does not

5    include subsequent amendments.

6    *Id.* (quoting *Director, Office Workers' Compensation Programs v. Peabody Coal Co.*, 554 F.2d 310,

7    322 (7th Cir. 1977).   Here, 42 U.S.C. § 1396u-2(a)(3)(C) specifies the particular provision of the

8    Omnibus Budget Reconciliation Act ("OBRA") of 1985 that it adopts as well as the origin of that

9    provision.   Therefore, § 1396u-2(a)(3)(C) is a statute of specific reference rather than general

10   reference, and its adoption of § 9517(c)(3) does not include subsequent amendments to § 9517(c)(3).

11   *Id.*

12          Section 4734(2) of the 1990 OBRA amended § 9517(c) of the 1985 OBRA by adding a

13   subparagraph (3).   The resulting § 9517(c)(3) discusses "health insuring organizations which are

14   described in subparagraph (B), which first become operational on or after January 1, 1986, and which

15   are designated by the Governor, and approved by the Legislature of Califorrnia[.]"[4]   Subparagraph (B)

16   of § 9517(c)(3) defines "health insuring organization" as one that is "operated directly by a public

17   entity established by a county government in the State of California under a State enabling statute

18   [and] enrolls all Medicaid beneficiaries residing in the county in which it operates[.]"

19          Defendants argue that Alliance fits this description.   Horisons alleges no facts that contradict

20   Defendants' assertion.   Rather, Horisons contends that 42 U.S.C. § 1396u-2(a)(3)(C) "subsequently

21   superseded this language and requires and has required that the HIO be 'county-operated.'"   (Doc. 26,

22   p. 3).   However, Horisons alleges no facts to support this contention or its argument that Alliance is not

23   county-operated.   Based on the pleadings, the Court agrees that Alliance appears to be a managed care

24   entity that "is described in section 9517(c)(3) of the Omnibus Budget Reconciliation Act of 1985 (as

25   added by section 4734(2) of the Omnibus Budget Reconciliation Act of 1990)" and therefore is

26

27   [4] In 2008, § 9517(c)(3) was amended to include a reference to "any health insuring organization described in [subparagraph (B)] that is operated by a public entity established by Merced County."   However, as discussed above, this amendment has

28   no effect on 42 U.S.C. § 1396u-2(a)(3)(C) because § 1396u-2(a)(3)(C)'s adoption of OBRA's § 9517(c)(3) does not include subsequent amendments to § 9517(c)(3).   *Pearce*, 603 F.2d at 767 (quoting *Peabody Coal Co.*, 554 F.2d at 322).

deemed to have met 42 U.S.C. § 1396u-2(a)(3)(A)'s requirement that ""[a] State must permit an individual to choose a managed care entity from not less than two such entities[.]" 42 U.S.C. § 1396u-2(a)(3).

### ii.    Antitrust Immunity

Section 1396u-2(a)(3)(C) brings Defendants' conduct into compliance with a competitive requirement of the Social Security Act. Whether Defendants' conduct complies with the Sherman Act, however, requires further analysis.

"Sometimes regulatory statutes explicitly state whether they preclude application of the antitrust laws." *Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264, 270 (2007) (citing Webb–Pomerene Act, 15 U.S.C. § 62 (expressly providing antitrust immunity) and the Telecommunications Act of 1996 § 601(b)(1), 47 U.S.C. § 152 (stating that antitrust laws remain applicable)). "Where regulatory statutes are silent in respect to antitrust, however, courts must determine whether, and in what respects, they implicitly preclude application of the antitrust laws." *Id*. "Those determinations may vary from statute to statute, depending upon the relation between the antitrust laws and the regulatory program set forth in the particular statute, and the relation of the specific conduct at issue to both sets of laws." *Id*. (internal citations omitted). Thus, in deciding whether 42 U.S.C. § 1396u-2(a)(3)(C) precludes antitrust law, this Court is determining whether, "given context and likely consequences, there is a 'clear repugnancy' between [§ 1396u-2(a)(3)] and the antitrust complaint, *i.e.*, whether the two are 'clearly incompatible.'" *Id*. at 275.

Because "[t]he antitrust laws represent a 'fundamental national economic policy,'" "[i]mplied antitrust immunity is not favored, and can be justified only by a convincing showing of clear repugnancy between the antitrust laws and the regulatory system." *Nat'l Gerimedical Hosp. & Gerontology Ctr. v. Blue Cross of Kansas City*, 452 U.S. 378, 388 (1981) (quoting *Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213, 218 (1966); *United States v. National Ass'n of Securities Dealers*, 422 U.S. 694, 719-720 (1975)). "Repeal is to be regarded as implied only if necessary to make the [subsequent law] work, and even then only to the minimum extent necessary. This is the guiding principle to reconciliation of the two statutory schemes." *Id*. (quoting *Silver v. New York Stock Exchange*, 373 U.S. 341, 357 (1963).

Here, the conduct at issue is Merced County's establishing Alliance as the sole Medicaid managed care plan in the county such that all providers must contract with Alliance to service Medicaid beneficiaries in the county and all individuals must enroll with Alliance to receive Medicaid benefits. Alliance thus possesses and has maintained a monopoly in the Medicaid managed care plan market in Merced County. Congress expressly permitted such conduct in the Social Security Act. 42 U.S.C. § 1396u-2(a)(3)(C). Horisons argues that this conduct violates the Sherman Act section one's prohibition of combinations and conspiracies in restraint of trade and section two's prohibition of monopolies and attempts to monopolize. If the conduct in question were found to violate the Sherman Act, it "would produce conflicting guidance, requirements, duties, privileges, or standards of conduct." *Credit Suisse*, 551 U.S. at 275-76. In fact, where the same conduct is expressly authorized by one applicable federal statute and prohibited by another, there is "a conflict that rises to the level of incompatibility." *Id*. at 277. Moreover, Congress clearly possesses and exercises the authority to regulate the requirements state Medicaid programs must meet in order to receive federal funding. *Id*. at 275. Therefore, 42 U.S.C. § 1396u-2(a)(3)(C) is "clearly incompatible" with the Sherman Act §§ 1 and 2 to the extent that § 1396u-2(a)(3)(C) expressly authorizes a state to require an individual to enroll in a health-insuring organization that "is described in section 9517(c)(3) of the Omnibus Budget Reconciliation Act of 1985 (as added by section 4734(2) of the Omnibus Budget Reconciliation Act of 1990)" without "permit[ting such] individual to choose a managed care entity from not less than two such entities[.]" 42 U.S.C. § 1396u-2(a)(3).

For these reasons, Defendants' motions to dismiss Horisons' first cause of action against for violation of the Sherman Act as to the Medi-Cal managed healthcare plan market in Merced County is GRANTED with leave to amend.

### 2. Medicaid Healthcare Provider Market in Merced County

In its first cause of action, Horisons also alleges that Defendants conspired with Golden Valley to monopolize the Medi-Cal healthcare provider market in Merced County. (Compl. ¶¶ 20, 24).

To state a claim for conspiracy to monopolize in violation of Sherman Act § 2, Horisons must allege four elements: "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust

14

1  injury." *Paladin Assoc., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

2         Horisons alleges that Defendants conspired with Golden Valley, Horisons' main competitor,

3  to monopolize the provision of Medi-Cal healthcare services in Merced County through the

4  elimination of any Medi-Cal healthcare provider competing with Golden Valley.  (Compl. ¶ 24).

5  Specifically, Horisons alleges that Alliance allows Golden Valley to use temporarily credentialed

6  professional providers who are similarly situated to Horisons' professional providers without any

7  adverse consequences to Golden Valley while failing to credential any of Horisons' professionals.  *Id*.

8  at¶ 20.  The Deputy Chief Executive Officer of Golden Valley, Christine Noguera ("Noguera"), has

9  been a member of Alliance's governing body at all relevant times.  *Id*.  Noguera allegedly has rebuffed

10  Horisons' attempts to work cooperatively with Golden Valley to meet patient needs and has indicated

11  that it is the goal of Golden Valley to take over Horisons.  *Id*.  Finally, Horisons alleges that, as a result

12  of Alliance's discriminatory failure to temporarily credential Horisons' providers and the adverse

13  actions Alliance took against Horisons for using uncredentialed providers, Horisons has lost and will

14  lose millions of dollars, including the loss of $350,000 per month due to non-enrollment of new

15  members, and is threatened with imminent bankruptcy.  *Id*. at ¶ 25.  Accepting as true all the

16  allegations in the complaint, construing the pleading in the light more favorable to Horisons, and

17  resolving all doubts in Horisons' favor, Horisons has alleged the essential elements of a *prima facie*

18  claim for conspiracy to monopolize in violation of the Sherman Act § 2.  *Sprewell*, 266 F.3d at 988;

19  *Paladin Assoc., Inc.*, 328 F.3d at 1158.

20         **a.  Defenses Raised Generally as to Horisons' Sherman Act**

21         **Claims**

22         Defendants do not address this portion of Horisons' Sherman Act cause of action separately

23  from Horisons' allegations regarding the Medicaid managed healthcare entity market in Merced

24  County.  The defenses Alliance and the County raised generally as to Horisons' first cause of action

25  limit but fail to defeat Horisons' Sherman Act claim as to the Medicaid healthcare provider market in

26  Merced County.

27         **i.  Statutory Exemption Under Social Security Act**

28         The Medicaid healthcare provider market in Merced County, unlike the Medicaid managed

healthcare entity market, is not protected by a "clear incompatibility" between 42 U.S.C. § 1396u-2(a)(3)(C) and the Sherman Act. In fact, 42 U.S.C. § 1396u-2(a)(3)(C) states that, where a state requires an individual to enroll in a managed care entity, the individual must be given "a choice between at least two providers within such entity" in order for the state to be considered to meet the competitive requirement of § 1396u-2(a)(3)(A). Therefore, this provision of the Social Security Act indicates support for Horisons' arguments rather than the defenses raised by Alliance and the County.

### ii.      State Action Immunity Doctrine

The state action doctrine grants Sherman Act immunity to a state's imposition of market restraints "as an act of government." *Parker v. Brown*, 317 U.S. 341, 350, 352 (1943). "[S]ubstate governmental entities do receive immunity from antitrust scrutiny when they act 'pursuant to state policy to displace competition with regulation or monopoly public service.'" *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 133 S. Ct. 1003, 1010 (2013) (citing *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 370 (1991); *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 411–413 (1978)). "As with private parties, immunity will only attach to the activities of local governmental entities if they are undertaken pursuant to a "clearly articulated and affirmatively expressed" state policy to displace competition." *Id.* at 1011 (citing *Community Communications Co. v. Boulder*, 455 U.S. 40, 52 (1982)). Here, Defendants point to no clearly articulated state policy to displace competition in the Medi-Cal healthcare provider market in Merced County or any other county in California. Therefore, Defendants have not shown that the state action doctrine applies to bar Horisons' Sherman Act claim as to the Medicaid healthcare provider market in Merced.

### iii.     Local Government Antitrust Act

The Local Government Antitrust Act of 1984 ("LGAA") precludes the recovery of damages, costs, or attorney's fees for Sherman Act or Clayton Act violations from "any local government, or official or employee thereof acting in an official capacity." 15 U.S.C. §§ 34-36. The term "local government" is defined as "a city, county, parish, town, township, village, or any other general function government unit established by State law" or "a school district, sanitary district, or any other special function governmental unit established by State law in one or more States." 15 U.S.C. § 34.

Merced County clearly is a "local government" within the meaning of the LGAA and

16

1   therefore is exempt from Sherman Act damages.

2       Alliance argues that because it is a special commission established by Merced County
3   pursuant to California Welfare & Institutions Code § 14087.54 to meet the needs of delivery of
4   publicly assisted medical care and because it is expressly vested under § 14087.54 with "all rights,
5   powers, duties, privileges, and immunities vested in a county by this article," it falls under the LGAA.
6   (Doc. 23, p. 9).  Alliance also states that it was created by and can be terminated by the County and
7   that, upon its termination, any assets of Alliance are controlled by the County.  (Doc. 34, p. 6).

8       Horisons claims that Alliance "is in fact a completely separate entity of which the County of
9   Merced has washed its hands and which Merced County does not 'operate'" because Alliance
10  "functions like a private health maintenance organization ('HMO')" and "is a public entity only for
11  limited purposes."  (Doc. 26, pp. 4, 15).  Horisons declined to allege, however, any facts to show the
12  extent to which Alliance is a public or private entity or to show that Alliance's alleged function as a
13  private HMO overrides the purposes for which it is a public entity such that it does not fall under the
14  LGAA.

15      Further, another district court in the Ninth Circuit has held that a hospital district created and
16  regulated by a California statute was a "special function government unit" within the meaning of the
17  LGAA.  *Palm Springs Med. Clinic, Inc. v. Desert Hosp.*, 628 F. Supp. 454, 457 (C.D. Cal. 1986).  That
18  court noted that "[t]he language of the 1984 Act is inclusive and not exclusive, defining a 'local
19  government' as 'a school district, sanitary district, or any other special function governmental unit
20  established by State law in one or more States.'"  *Id*. at 456 n. 2; *see also*, *Capital Freight Servs., Inc.*
21  *v. Trailer Marine Transp. Corp.*, 704 F.Supp. 1190, 1198 (S.D.N.Y. 1989) ("[T]he language and
22  legislative history of the LGAA is explicitly inclusive, not exclusive.").

23      Because Alliance was created and can be terminated by a county government pursuant to a
24  California statute, vested by state statute with all rights and immunities vested in a county, and
25  performs a localized public function of providing publicly assisted healthcare services, Alliance is a
26  "special function government unit" within the meaning of the LGAA.  *See Daniel v. Am. Bd. of*
27  *Emergency Med.*, 988 F. Supp. 127, 197 (W.D.N.Y. 1997) (holding that a public hospital was a
28  "special function government unit" within the meaning of the LGAA because it "was created and is

1  regulated by the California Health and Safety Code in its performance of a localized public function,

2  protecting the health and welfare of individuals in California by providing medical treatment in areas

3  with inadequate care[.]").

4  　　　　Moreover, "[t]he LGAA does not extend its immunity to injunctive relief." *R. Ernest Cohn,*

5  *D.C., D.A.B.C.O. v. Bond*, 953 F.2d 154, 158 (4th Cir. 1991); *see also*, 15 U.S.C. § 35.　Horisons also

6  seeks injunctive relief against Defendants in its first cause of action for Sherman Act violations.

7  (Compl. ¶ 26).

8  　　　　Because Horisons has alleged the required elements to state a claim for conspiracy to

9  monopolize in violation of the Sherman Act § 2 but cannot recover antitrust damages from Defendants,

10  Defendants' motions to dismiss Horisons' first cause of action for Sherman Act violations as to the

11  Medicaid healthcare provider market in Merced County is GRANTED as to Horisons' claim for

12  antitrust damages and DENIED as to Horisons' claim for injunctive relief.

13  　　　　　　　**b.　　Joinder of Golden Valley Health Centers**

14  　　　　In Horisons' surviving Sherman Act claim, Horisons alleges that Defendants and Golden

15  Valley conspired together to monopolize the provision of Medi-Cal healthcare services in violation of

16  Sherman Act § 2.　Golden Valley is not a party in this action.

17  　　　　The Supreme Court has held that "[a] court with proper jurisdiction may also consider *sua*

18  *sponte* the absence of a required person[.]"　*Republic of Philippines v. Pimentel*, 553 U.S. 851, 861

19  (2008) (citing *Minnesota v. Northern Securities Co.*, 184 U.S. 199, 235 (1902); *Provident Tradesmens*

20  *Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)).

21  　　　　Here, Horisons' first cause of action alleges that Golden Valley participated in a conspiracy

22  with Defendants in violation of federal antitrust law.　Therefore, Golden Valley has an "interest

23  relating to the subject of the action" such that the disposal of this action without Golden Valley as a

24  party "may as a practical matter impair or impede [Golden Valley's] ability to protect the interest[.]"

25  Fed. R. Civ. P. 19(a)(1).　In other words, Golden Valley is a "required party" within the meaning of

26  Rule 19(a).

27  　　　　Therefore, the Court ORDERS that Plaintiffs join Golden Valley Health Centers as a

28  defendant.

ii.        42 U.S.C. § 1983

In the second cause of action, Horisons claims that Alliance deprived Horisons of its right to free exercise of religion under the First Amendment and of its right to procedural and substantive due process under the Fifth and Fourteenth Amendments in violation of 42 U.S.C. § 1983 through Alliance's treatment of its contract with Horisons.

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)).  "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–633 (9th Cir. 1988).

Horisons appears to allege that Alliance was acting under color of state law because it was acting pursuant to the power and duties granted to it by the state of California under Cal. Welf. & Inst. Code § 14087.54.  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941).  Here, § 14087.54 provides that "[a] county board of supervisors may, by ordinance, establish a commission to negotiate the exclusive contract [with the California Medical Assistance Commission] and to arrange for the provision of health care services provided pursuant to this chapter."  Cal. Welf. & Inst. Code § 14087.54(b)(1). Therefore, Alliance's conduct with regards to its contract with Horisons for the provision of healthcare services pursuant to § 14087.54 appears to be in the exercise of power that Alliance "possessed by virtue of state law and made possible only because [Alliance] is clothed with the authority of state law." *West*, 487 U.S. at 49 (quoting *Classic*, 313 U.S. at 326).

As for the second prong of the § 1983 test, Horisons alleges that Alliance deprived Horisons of its constitutional rights to free exercise of religion, procedural due process and substantive due process by ceasing the enrollment of new members at Horisons and threatening to terminate its

contract with Horisons.   (Compl. ¶ 29).   Specifically, Horisons claims that Alliance wrongfully imposed an annual patient visit limit, required improper and discriminatory credentialing procedures, and objected to Horisons' and Horisons' patients' exercise of religion.  (Compl. ¶¶ 9, 15-18, 20).

### 1.      Freedom of Exercise

"In order to establish a First Amendment violation, a plaintiff must show that the defendant or defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith."  *Atkins v. Harris*, C09-5625 BHS/KLS, 2009 WL 3856435 at *2 (W.D. Wash. Nov. 16, 2009) (quoting *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997), overruled on other grounds, *Penwell v. Holtgeerts*, 386 F. App'x 665, 667 (9th Cir. 2010)).  In support of its claim, Horisons alleges that Noguera, in her capacity as a member of Alliance's governing body, "objected to religious services, such as prayer support, provided at Horisons' clinics, which are an essential component of Horisons' faith-based mission to serve the healthcare needs of the poor."  (Compl. ¶ 20). An allegation that one member of Alliance's governing body "objected to" religious services at Horisons' clinics fails show or give rise to a reasonable inference that Alliance burdened Horisons' practice of religion by preventing Horisons from engaging in conduct mandated by Horisons' faith. *Atkins*, 2009 WL 3856435 at *2  (quoting *Freeman*, 125 F.3d at 736).  In fact, Horisons fails to allege that Horisons ceased to engage in any religious conduct, that Alliance prevented Horisons from engaging in any religious conduct, what religious conduct Alliance burdened was mandated by Horisons' faith, or, indeed, what Horisons' faith actually is.  Therefore, Horisons fails to come close to stating a sufficient claim that Alliance deprived Horisons of Horisons' First Amendment right to freedom of exercise under 42 U.S.C. § 1983.

### 2.      Procedural Due Process

"To establish a violation of procedural due process, a plaintiff must demonstrate: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)).

Horisons alleges that Alliance allowed provisional or temporary credentialing for similarly qualified professionals at Golden Valley but not for Horisons, that Alliance imposed a limit on the

number of annual visits per patient, that Alliance ceased enrollment of new members at Horisons due to Horisons' use of non-credentialed healthcare professionals, and that Alliance threatened to cancel its contract with Horisons.  (Compl. ¶¶ 9, 15-18, 20).  However, Horisons fails to allege how any of this conduct deprived Horisons of a constitutionally protected liberty or property interest.  Further, even assuming Horisons sufficiently alleges such a deprivation, which it does not, Horisons makes no allegations about what procedural protections were involved or how they were inadequate.  Because Horisons fails to meet either of the required elements, Horisons has not stated a sufficient claim that Alliance violated Horisons' constitutional right to procedural due process.  *Tutor-Saliba Corp*, 452 F.3d at 1061 (quoting *Brewster*, 149 F.3d at 982).

### 3.    Substantive Due Process

"Substantive due process protects individuals from arbitrary deprivation of their liberty by the government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998)).  "Substantive due process is ordinarily reserved for those rights that are 'fundamental.'" *Id*. at 990 (citing *Washington v. Glucksberg*, 521 U.S. 702, 721-22 (1997)). In *Glucksberg*, the Supreme Court set forth the two elements of the substantive due process analysis. 521 U.S. at 720–21.  First, "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed[.]" *Id*. (internal quotations and citations omitted).   Second, the Supreme Court requires "a careful description of the asserted fundamental liberty interest." *Id*. (internal quotations and citations omitted). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994).   The Supreme Court has instructed courts against expanding the substantive reach of the fourteenth amendment, "particularly if it requires redefining the category of rights deemed to be fundamental." *Bowers v. Hardwick*, 478 U.S. 186, 195 (1986), *overruled on other grounds*, *Lawrence v. Texas*, 539 U.S. 558 (2003).

Horisons summarily alleges that, in engaging in the conduct discussed above, Alliance "has deprived Horisons of . . . procedural and substantive due process of law under the Fifth Amendment

21

thereto as applied to the states by the Fourteenth Amendment[.]"  Horisons fails to identify any fundamental right or liberty that is infringed upon by Alliance's alleged conduct, let alone give "a careful description of the asserted fundamental liberty interest."  *Glucksberg*, 521 U.S. at 720–21. Moreover, nothing in Horisons' complaint relates to matters recognized as protected by substantive due process.  *Albright*, 510 U.S. at 272.  Therefore, Horisons wholly fails to state a claim that Alliance violated Horisons' constitutional right to substantive due process in violation of 42 U.S.C. § 1983.

Because Horisons fails to state a claim against Alliance for deprivation of any constitutionally projected right in violation of 42 U.S.C. § 1983, Alliance's motion to dismiss Horisons' second cause of action is GRANTED with leave to amend.

### iii.       Cartwright Act

In its third cause of action, Horisons alleges that "the same acts of Merced and Alliance that are alleged above to have violated Sections 1 and 2 of the Sherman Antitrust Act" also violate California's Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq*., and that § 16750 provides for antitrust remedies against Defendants.  (Compl. ¶ 31).

The Cartwright Act describes who may sue as plaintiffs and who may be sued as defendants under the provisions of the Act.  Section 16702 defines Cartwright defendants as "corporations, firms, partnerships and associations[.]"  Cal. Bus. & Prof. Code § 16702.  It is well established that political subdivisions of the state, such as cities and counties, cannot be sued as defendants under the Cartwright Act. *People ex rel. Freitas v. City & Cnty. of San Francisco*, 92 Cal. App. 3d 913, 921 (Ct. App. 1979); *Blank v. Kirwan*, 39 Cal. 3d 311, 323 (1985) ("The actions of political subdivisions of the state, such as the City of Bell, and the effects of such actions are outside the scope of the act.") (internal citations omitted).   Therefore, the County of Merced, as a political subdivision of the state of California cannot be sued as a defendant under the Cartwright Act.

Horisons argues that Alliance can be sued as a defendant under the Cartwright Act because "Alliance is independent of the County of Merced . . . and acts like a private HMO without County supervision."  (Doc. 26 p. 18).  However, Horisons does not allege facts to show that Alliance is a corporation, firm, partnership, or association within the meaning of § 16702.  While California courts have extended the scope of the Cartwright Act to also apply to the professions even though they are not

1  expressly mentioned as "persons" who can be sued under § 16702, no court has found that an entity

2  such as Alliance, that was created by a political subdivision of the state pursuant to a state statute and

3  expressly vested with "all rights, powers, duties, privileges, and immunities vested in a county," can be

4  sued as a defendant under the Cartwright Act.  *Cianci v. Superior Court*, 40 Cal. 3d 903, 925 (1985);

5  Cal. Welf. & Inst. Code § 14087.54.  In fact, a California court has "summarily reject[ed]" a plaintiff's

6  argument that "corporations" should be read to include "municipal corporations" within the meaning

7  of § 16702.  *Penn v. City of San Diego*, 188 Cal. App. 3d 636, 643 (Cal. Ct. App. 1987).  Therefore,

8  Horisons fails to show that Alliance can be sued as a defendant under the Cartwright Act.

9  　　　Because Horisons fails to allege that either the County or Alliance is a "person" who may be

10  sued under the Cartwright Act, Defendants' motions to dismiss Horisons' third cause of action is

11  GRANTED with prejudice as to the County and GRANTED with leave to amend as to Alliance.

12  　　　　**iv.**　　　　**Unruh Civil Rights Act**

13  　　　In the fourth cause of action, Horisons alleges that "[b]y reason of the acts alleged above,

14  Alliance has been and is discriminating against Horisons on the basis of religion and on the basis of

15  Horisons providing healthcare services to persons who are disabled . . . and who are predominantly

16  Hispanic" in violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51.  (Compl. ¶ 33).

17  　　　The Unruh Act prohibits a "business establishment" from discriminating against any person

18  based on, inter alia, religion, disability, race, or national origin.  Cal. Civ. Code § 51.

19  　　　As a threshold issue, the parties do not discuss whether Alliance is a "business

20  establishment" within the meaning of the Unruh Act.  There is no controlling authority on whether an

21  entity such as Alliance is a "business establishment" under the Unruh Act.  *See*, *e.g.*, *Taormina v.*

22  *California Dep't of Corr.*, 946 F.Supp. 829, 833-34 (S.D. Cal. 1996) (holding that state prisons are not

23  "business establishments"); *Spanish Speaking Citizens' Foundation, Inc. v. Low*, 85 Cal.App. 4th 1179

24  (Cal. Ct. App. 2000) (holding that the state Department of Insurance does not act as a "business

25  establishment" when it adopts regulations); *Sullivan v. Vallejo City Unified School District*, 731

26  F.Supp. 947 (E.D. Cal.1990) (holding that school districts are "business establishments"); *Nicole M. v.*

27  *Martinez Unified School District*, 964 F.Supp. 1369 (N.D. Cal. 1997) (same); *Bohlke v. California*, C-

28  06-1667, 2006 WL 2355395 (N.D. Cal. Aug. 15, 2006) (holding that the state Department of Motor

Vehicles is a "business establishment"). Because Alliance does not contest the application of the Unruh Act to Alliance and because Horisons falls far short of stating a claim under Unruh even if it does apply to Alliance, the Court for the purposes of these motions assumes without deciding that Alliance is a "business establishment" within the meaning of the Unruh Act.[5]

The Supreme Court of California has held that "a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act." *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175 (1991). "A disparate impact analysis or test does not apply to Unruh Act claims." *Id.* However, "[a] plaintiff who establishes a violation of the [Americans with Disabilities Act] need not prove intentional discrimination in order to obtain damages under section 52." *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 665, 208 P.3d 623, 625 (2009). Horisons fails to allege facts to show that Alliance intentionally discriminated against Horisons on the basis of religion, race, or national origin. Horisons also fails to allege facts to show that Alliance violated the ADA. Rather, Horisons alleges that one member of Alliance's governing body "objected to" religious services at Horisons' clinics, that Horisons provides services to people who are disabled and/or Hispanic, and makes the summarily conclusive assertion that Alliance unlawfully discriminated against Horisons on those bases in violation of the Unruh Act. (Compl. ¶¶ 16, 20, 33). Horisons' pleadings exemplify the mere "labels and conclusions" and "bare assertions" that cannot survive a motion to dismiss. *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S.Ct. at 1951. Therefore, Alliance's motion to dismiss Horisons' fourth cause of action under the Unruh Act is GRANTED with leave to amend.

### v.        Mandamus Pursuant to Cal. Code Civ. P. § 1085

In the fifth cause of action, Horisons seeks a writ of mandamus pursuant to Cal. Code Civ. P. § 1085 against Alliance "compelling Alliance to perform its mandatory duty to permit temporary credentialing in accordance with the provisions of the Joint Commission on Healthcare Organizations and standard industry practice [and] compelling Alliance to cease adverse action against Horisons

---

[5] Also, this Court previously noted that "[t]he original version of the bill which became the Unruh Act extended its antidiscriminatory provisions to 'all public or private groups, organizations, associations, business establishments, schools, and public facilities" and "[l]ater versions dropped all the specific enumerations except 'business establishments' but added to the latter phrase the modifying words 'of every kind whatsoever.'" *Sullivan*, 731 F. Supp. at 952.

based on Alliance's policy that patient visits should not exceed an average of 3.2 per year irrespective of medical necessity." (Compl. ¶ 18).

Section 1085 provides that "[a] writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station[.]"  Cal. Code Civ. P. § 1085(a).  "There are two essential requirements to the issuance of a traditional writ of mandate: (1) a clear, present and usually ministerial duty on the part of the respondent, and (2) a clear, present and beneficial right on the part of the petitioner to the performance of that duty."  *California Ass'n for Health Servs. at Home v. Dep't of Health Servs.*, 148 Cal. App. 4th 696, 704 (Cal. Ct. App. 2007) (citing *Loder v. Municipal Court for San Diego Judicial Dist. of San Diego County*, 17 Cal.3d 859, 863 (1976).  "A ministerial duty is one that is required to be performed in a prescribed manner under the mandate of legal authority without the exercise of discretion or judgment."  *Cnty. of San Diego v. State*, 164 Cal. App. 4th 580, 593 (2008) (citing *Morgan v. City of Los Angeles Bd. of Pension Comrs.*, 85 Cal.App.4th 836, 843 (Cal. Ct. App. 2000); *Unnamed Physician v. Bd. of Trustees*, 93 Cal.App.4th 607, 618 (Cal. Ct. App. 2001)).  Issuance of a writ of mandate "is not necessarily a matter of right, but lies rather in the discretion of the court, but where one has a substantial right to protect or enforce, and this may be accomplished by such a writ, and there is no other plain, speedy and adequate remedy in the ordinary course of law, [the petitioner] is entitled as a matter of right to the writ, or perhaps more correctly, in other words, it would be an abuse of discretion to refuse it."  *Powers v. City of Richmond*, 10 Cal.4th 85, 114 (1995) (internal citations omitted).

Horisons contends that Alliance has a clear, present, and ministerial duty to cease its practices that allegedly violate antidiscrimination provisions of California law.  (Compl. ¶ 37).  Specifically, Horisons argues that Alliance has such a duty to cease its practices of denying temporary credentialing, maintaining a limit on the average annual number of patient visits, ceasing new member enrollment at Horisons, and refusing to credential a Horisons chiropractor. (Doc. 26 p. 22).  Horisons' argument is wholly unsupported.  Horisons points to no statute or ordinance that imposes upon Alliance a ministerial duty to permit temporary credentialing, to not limit average annual patient visits, to permit new member enrollment at any given provider, or to credential any given chiropractor.

Horisons also fails to allege facts to show that Horisons possesses a clear, present and beneficial right to the performance of any duty by Alliance. *California Ass'n for Health Servs. at Home*, 148 Cal. App. 4th at 704. Horisons simply asserts that Alliance's practices discussed above infringe upon "Horisons' state and federal constitutional rights to offer religious-based healthcare services[.]" (Compl. ¶ 37).

Because Horisons wholly fails to meet either element for a writ of mandamus, Alliance's motion to dismiss Horisons' fifth cause of action is GRANTED with leave to amend.

### vi.    Breach of Contract

Finally, in the sixth cause of action, Horisons alleges that "[t]he acts of Alliance alleged above are and have been material breaches" of Horisons' contract with Alliance and that Horisons "has performed all of the terms and conditions of the contract alleged herein on its part to be performed[.]" (Compl. ¶¶ 40-41).

In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010) (quoting *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (Cal. Ct. App. 2008)).

Horisons wholly fails to allege any facts to show a breach of contract by Alliance. The only contractual provisions Horisons references in its complaint pertain to credentialing. (Compl. ¶¶ 12-14). Horisons alleges no facts to show that Alliance failed to comply with these provisions. Also, in its opposition, Horisons states that "Plaintiffs do not allege that Plaintiffs' temporary credentialing breaches the contract; rather, Alliance's refusal to accept this temporary credentialing, among other breaches, is a breach of the contract." (Doc. 26, p. 23). Nowhere in the complaint does Horisons allege facts to show that Alliance has a contractual duty to accept temporary credentialing.

In fact, Horisons' own allegations indicate that Horisons failed to comply with its contract with Alliance. According to the complaint, the contract provides that "[t]o participate in the Alliance network, a provider must sign a Provider Services Agreement and his/her credential must be approved by the Peer Review and Credentialing Committee of the Santa Cruz-Monterey-Merced Managed

Medical Care Commission." (Compl. ¶ 13). Horisons appears to admit failing to comply with this provision: "Horisons has allowed licensed and competent professionals to provide professional services to patients pending Alliance's completion of full credentialing." (Compl. ¶ 16).

Because Horisons fails to allege the essential elements to state a claim for breach of contract under California law, Alliance's motion to dismiss Horisons' sixth cause of action is GRANTED with leave to amend.

**Motion for Sanctions**

The County also moves the Court to impose sanctions against Horisons' counsel pursuant to Fed. R. Civ. P. 11 (Doc. 32).

**A.    Legal Standard**

"An attorney is subject to Rule 11 sanctions, among other reasons, when he presents to the court 'claims, defenses, and other legal contentions ... [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]'" *Holgate v. Baldwin*, 425 F.3d 671, 675-76 (9th Cir. 2005) (quoting Fed. R. Civ. P. 11(b)(2)). "When, as here, a 'complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it.'" *Id*. at 676 (quoting *Christian v. Mattel, Inc*., 286 F.3d 1118, 1127 (9th Cir. 2002). "As shorthand for this test, we use the word 'frivolous' 'to denote a filing that is both baseless and made without a reasonable and competent inquiry.'" *Id*. (quoting *Moore v. Keegan Mgmt. Co*, 78 F.3d 431, 434 (9th Cir. 1996); *see also*, *Townsend v. Holman Consulting Corp*., 929 F.2d 1358, 1362 (9th Cir. 1990).

**B.    Discussion**

Horisons asserts two claims against the County – the first cause of action for violation of the Sherman Act and the third cause of action for violation of California's Cartwright Act.

**1.    Sherman Act**

The County fails to show that Horisons' Sherman Act claims against the County are legally baseless and made without a reasonable and competent inquiry. The County essentially reiterates the

defenses it raises to the first cause of action to assert that the cause of action is legally baseless: "In the face of such clear authority, Plaintiffs cannot be said to have been making a nonfrivolous argument." (Doc. 32 p. 8). However, as discussed above, the defenses the County raises fail to defeat Horisons' first cause of action in its entirety. Further, "[w]hen legal arguments are objectively baseless, '[e]ven the most cursory legal inquiry [should] reveal [the deficiency.]'" *Lima v. Deutsche Bank Nat. Trust Co.*, CIV. 12-00509 SOM, 2013 WL 5890662 at *4 (D. Haw. Oct. 30, 2013) (quoting *Holgate*, 425 F.3d at 677). The statutory interpretation necessitated by the parties' arguments as to the first cause of action, including whether Congress authorized Alliance's monopoly in the Medi-Cal managed healthcare plan market in Merced County, requires more analysis than a "cursory legal inquiry" to determine the merit of Horisons' claim. *Id*.

Therefore, because the County fails to show that Horisons' Sherman Act claims against the County are legally baseless to meet the first prong of the frivolousness analysis, the County's motion for sanctions against Horisons pursuant to Fed. R. Civ. P. 11 as to Horisons' first cause of action is DENIED.

## 2.      Cartwright Act

Although a closer question, the County also fails to show that Horisons' third cause of action against the County under the Cartwright Act is frivolous. The County argues that Horisons' claim is legally baseless because it is well established that the County, as a political subdivision of the state, cannot be sued as a defendant under the Cartwright Act. (Doc. 32 p. 10). Horisons contends that the body of caselaw interpreting the applicability of the Cartwright Act to state subdivisions is limited and dated and may have been superseded or amended by the California legislature's subsequent amendment to the Act's remedies provision. (Doc. 37 pp. 6-8). The Court agrees with the County that the amendment to the remedies provision has no effect on the ability of Horisons to sue the County as a defendant under the Cartwright Act. (Doc. 39 p. 4). However, the County goes no further than to assert that Horisons' third cause of action is subject to Rule 11 sanctions as frivolous because "[t]he first issue an experienced attorney, such as is present here, would consider, is whether or not the claim can be asserted against a public entity." (Doc. 32 pp. 10-11). Horisons' arguments indicate that Horisons' counsel did make a legal inquiry as to whether the County can be sued under the Cartwright

1  Act and correctly concluded that the *Freitas-Blank-Penn* line of cases established that political

2  subdivisions of the state cannot be Cartwright defendants.  (Doc 37 pp. 6-7); 92 Cal. App. 3d at 921;

3  39 Cal. 3d at 323; 188 Cal. App. 3d 636, 643.  However, Horisons' counsel conducted further inquiry

4  and reached the legally erroneous conclusion that the subsequent legislative amendments to the Act's

5  remedies provision may have made injunctive relief available against political subdivisions such as the

6  County under the Act.  *Id*. at pp. 7-8.  "When legal arguments are objectively baseless, '[e]ven the

7  most cursory legal inquiry [should] reveal [the deficiency.]'"  *Lima*, 2013 WL 5890662 at *4 (quoting

8  *Holgate*, 425 F.3d at 677).  The County stops short of showing that even the most cursory legal inquiry

9  would reveal the deficiency in the conclusion Horisons' counsel reached as to injunctive relief against

10  the County.  As a result, the County fails to show that Horisons' third cause of action is legally

11  baseless.

12       The County's motion for sanctions against Horisons as to Horisons' Cartwright claim

13  pursuant to Fed. R. Civ. P. 11 is therefore DENIED.

14                      **CONCLUSION AND ORDER**

15       For the reasons discussed above, the Court

16       1.      DENIES Defendants Santa Cruz-Monterey-Merced Managed Medical Care

17               Commission d/b/a Central California Alliance for Health and the County of Merced's

18               motions to dismiss Plaintiffs Horisons Unlimited and Horisons Unlimited Health Care's

19               complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1);

20       2.      DISMISSES with leave to amend Plaintiffs' first cause of action under the

21               Sherman Act as to the Medi-Cal managed healthcare plan market in Merced County and

22               for antitrust damages as to the Medi-Cal healthcare provider market in Merced County

23               for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

24       3.      DENIES Defendants' motion to dismiss Plaintiff's first cause of action for

25               injunctive relief under the Sherman Act as to the Medi-Cal healthcare provider market

26               in Merced County for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

27       4.      ORDERS that Plaintiff join Golden Valley Health Centers as a defendant in this

28               action;

5.      DISMISSES with leave to amend Plaintiffs' second cause of action under 42 U.S.C. § 1983, Plaintiffs' third cause of action under the Cartwright Act, Plaintiffs' fourth cause of action under the Unruh Civil Rights Act, Plaintiffs' fifth cause of action seeking a writ of mandamus under Cal. Code Civ. P. § 1085, and Plaintiffs' sixth cause of action for common law breach of contract for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); and

6.      DENIES the County of Merced's motion for sanctions against Plaintiffs pursuant to Fed. R. Civ. P. 11.

Plaintiffs shall have ***one opportunity*** to file and serve an amended complaint in an attempt to cure the deficiencies described herein.  Any such further amended complaint shall be filed and served within 20 days of electronic service of this order.  Defendants no later than 20 days after service of the second amended complaint shall file a response thereto.

**SO ORDERED**
**Dated: June 27, 2014**

**/s/ Lawrence J. O'Neill**
**United States District Judge**