UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORISONS UNLIMITED and HORISONS UNLIMITED HEALTH CARE,<br><br>Plaintiffs,<br><br>v.<br><br>SANTA CRUZ-MONTEREY-MERCED MANAGED MEDICAL CARE COMMISSION d/b/a CENTRAL CALIFORNIA ALLIANCE FOR HEALTH and THE COUNTY OF MERCED,<br><br>Defendants. | 1:14-CV-00123-LJO-MJS<br><br>**ORDER ON MOTION TO CORRECT CLERICAL ERROR, OR IN THE ALTERNATIVE, FOR RECONSIDERATION**<br>(Doc. 48) |

**INTRODUCTION**

Plaintiffs Horisons Unlimited and Horisons Unlimited Health Care (collectively, "Horisons" or "Plaintiffs") bring this action for violations of the Sherman Act, 15 U.S.C. §§ 1, 2, 42 U.S.C. § 1983, and California antitrust and anti-discrimination law as well as for breach of contract and for mandamus against Defendants Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central California Alliance for Health ("Alliance") and the County of Merced ("the County") (collectively, "Defendants"). Before the Court is the County's motion to correct a perceived clerical error or, in the alternative, for reconsideration. For the reasons discussed below, the Court DENIES the County's motion.

1

# BACKGROUND

## A.    Facts[1]

The facts of this case are discussed in full in this Court's June 30, 2014 Order. (Doc. 47).[2]

As is relevant to the instant motion, Horisons' main competitor for Medi-Cal patients in Merced County is Golden Valley Health Centers ("Golden Valley"). Horisons alleges that the County and Alliance conspired with Golden Valley to monopolize Medi-Cal managed healthcare services in Merced County through elimination of any competing managed care plan and of any competing healthcare provider.

Horisons further alleges that it has lost and will lose millions of dollars due to Defendants' actions, including the loss of $350,000 per month due to non-enrollment of new members, and is threatened with imminent bankruptcy.

## B.    Procedural History

On January 28, 2014, Horisons filed a complaint for antitrust violations, anti-discrimination violations, and breach of contract against Defendants and moved for a temporary restraining order ("TRO"). (Doc. 1). On January 29, 2014, this Court denied Horisons' motion for a TRO. (Doc. 10). .

On June 30, 2014, this Court granted in part and denied in part the County and Alliance's motions to dismiss Horisons' complaint and denied the County's motion for sanctions. Specifically, the Court allowed Horisons to proceed on its first cause of action for conspiracy to monopolize in violation of Sherman Act § 2 against Defendants.

On July 1, 2014, the County filed the instant motion to correct a perceived clerical error or, in the alternative, for reconsideration of this Court's June 30, 2014 order.

# DISCUSSION

## Motion to Correct Clerical Error

The County moves this Court to remove the "s" from "Defendants" in this Court's Order "to

---

[1] The background facts are derived from the complaint. The Court accepts the factual allegations as true for purposes of this motion. *Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

[2] This Court's July 2, 2014 Amended Order is the operative Order resolving Defendants' motions to dismiss Horisons' complaint. (Docs. 20, 23, 49). The July 2, 2014 Amended Order amends the June 30, 2014 Order only to correct an inadvertent omission in the Conclusion section of the June 30, 2014 order. (Doc. 49). Because the Amended Order merely corrects an inadvertent omission, and because the instant motion concerns the Court's June 30, 2014 Order, the Court discusses and refers to the June 30, 2014 Order in this Order resolving the County's instant motion.

1  correct what may be its error of permitting the first cause of action to continue against Merced County
2  as it intended to refer only to Alliance[.]" (Doc. 48 p. 3).
3      As indicated in the June 30, 2014 Order, this Court in fact intends for Horisons' surviving
4  Sherman Act claim to proceed against both Alliance and the County. Therefore, the County's motion
5  to correct a perceived clerical error is DENIED.

## Motion for Reconsideration

7      The County moves this Court in the alternative to reconsider its June 30, 2014 Order to the
8  extent that it allows Horisons' first cause of action under the Sherman Act to proceed against the
9  County.

### A.   Legal Standard

11      A court may grant a motion for relief from a final judgment where "1) the motion is necessary
12  to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party
13  presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent
14  manifest injustice; or 4) there is an intervening change in controlling law." *Turner v. Burlington
15  Northern Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (internal citations, quotations,
16  emphasis omitted). *See also*, *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255,
17  1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court (1) is presented with newly
18  discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if
19  there is an intervening change in controlling law.") (internal citation omitted).
20      A district court may reconsider and reverse a previous decision for any reason it deems
21  sufficient, even in the absence of new evidence or an intervening change in or clarification of
22  controlling law. *Abada v. Charles Schwab & Co., Inc.*, 127 F.Supp.2d 1101, 1102 (S.D. Cal. 2000).
23  Nevertheless, a court should generally leave a previous decision undisturbed absent a showing of clear
24  error or manifest injustice. *Id*. Reconsideration is not a mechanism for parties to make new arguments
25  that could reasonably have been raised in their original briefs. *See*, *Kona Enters. v. Estate of Bishop*,
26  229 F.3d 887, 890 (9th Cir. 2000). Nor is it a mechanism for the parties "to ask the court to rethink
27  what the court has already thought through—rightly or wrongly." *United States v. Rezzonico*, 32
28  F.Supp.2d 1112, 1116 (D. Ariz. 1998). "To succeed, a party must set forth facts or law of a strongly

convincing nature to induce the court to reverse its prior decision." *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001).

### B.    Analysis

The County challenges this Court's findings on the sufficiency of Horisons' allegations as to its conspiracy to monopolize in violation of Sherman Act § 2 claim.

In stating a claim for conspiracy to monopolize in violation of Sherman Act § 2, Horisons alleges the four required elements: "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *Paladin Assoc., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

The County objects to this Court's allowing Horisons' first cause of action to proceed against the County as well as against Alliance because "every single allegation of the complaint cited by the court was alleged to be performed by Alliance, not Merced County." (Doc. 48 p. 3). "A conspiracy to monopolize action is similar in its essence to an attempt to monopolize action." *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 926 (9th Cir. 1980). "Both focus on specific intent to monopolize and anticompetitive acts designed to effect that intent, although in the conspiracy claim the act may be no more than the agreement itself." *Id*. Thus, to the extent that the County objects to this Court's Order because of the lack of alleged overt acts performed by the County rather than by Alliance, the County's argument fails. (Doc. 48 p. 3). First, the Ninth Circuit has made clear that the requisite act in a conspiracy claim may be no more than the agreement in conspiring together to monopolize a certain market. *Hunt-Wesson Foods, Inc.*, 627 F.2d at 926. Horisons alleges that the County and Alliance conspired with Golden Valley to monopolize the Medi-Cal healthcare provider market in Merced County. (Compl. ¶¶ 20, 24). Second, the elements of a conspiracy to monopolize in violation of Sherman Act § 2 require an allegation of a single overt act in furtherance of the conspiracy, not an overt act by each alleged co-conspirator in furtherance of the conspiracy. *Paladin Assoc., Inc.*, 328 F.3d at 1158. This is because, in a conspiracy to violate federal antitrust law, "[a]bsent proof that any conspirator has withdrawn from the conspiracy, he is liable for all acts performed in furtherance of the conspiracy by the other conspirators." *United States v. Hayter Oil Co., Inc. of Greeneville, Tenn.*, 51 F.3d 1265, 1271 (6th Cir. 1995) (citing *Pinkerton v. United States*, 328

U.S. 640, 646-47 (1946)).

While less clear, the County also may be challenging this Court's findings on the sufficiency of Horisons' allegations as to the existence of the conspiracy to monopolize and the specific intent to monopolize elements. (Doc. 48 p. 3; Doc. 53 p. 2). "[N]o particular level of market power or 'dangerous probability of success' has to be alleged or proved in a conspiracy claim where the specific intent to monopolize is otherwise apparent from the character of the actions taken." *Hunt-Wesson Foods, Inc.*, 627 F.2d at 926 (citing *Lessig v. Tidewater Oil Co.*, 327 F.2d 459, 474 (9th Cir. 1964); *Salco Corp. v. General Motors Corp.*, 517 F.2d 567, 576 (10th Cir. 1975); *United States v. Consolidated Laundries Corp.*, 291 F.2d 563, 573 (2d Cir. 1961)). "But where actions are ambiguous, the existence and extent of market power may make the inference of specific intent from conduct more or less plausible." *Id.* at 927 (citing *Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co.*, 510 F.2d 1140, 1144 (2d Cir. 1975); *Optivision, Inc. v. Syracuse Shopping Center Assocs.*, 472 F.Supp. 665, 680 (N.D.N.Y. 1979); *Brager & Co. v. Leumi Securities Corp.*, 429 F.Supp. 1341, 1346 (S.D.N.Y. 1977)). Horisons alleges that the County and Alliance conspired with Golden Valley to monopolize the Medi-Cal healthcare provider market in Merced County through the elimination of any Medi-Cal healthcare provider competing with Golden Valley. (Compl. ¶¶ 20, 24). Horisons also alleges that co-conspirator Alliance is the sole managed Medi-Cal plan in Merced County and holds the exclusive power to contract with any potential Medi-Cal providers, thus giving Alliance considerable market power in the Medi-Cal provider market in Merced County as well. (Compl. ¶ 10). Horisons further alleges that, in its capacity as the sole Medi-Cal managed plan in Merced, Alliance took certain actions that were detrimental to Horisons and gave preferential treatment to Horisons' main competitor Golden Valley. (Compl. ¶¶ 15, 17, 20). These allegations give rise to the inference that the County, Alliance, and Golden Valley agreed to monopolize the Medi-Cal provider market in Merced County, for Golden Valley to hold that monopoly, and for Alliance to use its market power to act in furtherance of the conspiracy with the specific intent to monopolize. *Hunt-Wesson Foods, Inc.*, 627 F.2d at 927. "This is sufficient to withstand a motion to dismiss." *Id.* (holding as sufficient the plaintiff's allegations that the defendants conspired to monopolize with specific intent and that one co-conspirator defendant possessed market power.).

Because the County fails to show that the Court committed "manifest errors of law or fact" or that denying reconsideration would result in "manifest injustice," the County's motion for reconsideration is DENIED. *Turner*, 338 F.3d at 1063.

**CONCLUSION AND ORDER**

For the reasons discussed above, the Court

    1.    DENIES Defendant the County of Merced's motion to correct clerical mistake; and

    2.    DENIES Defendant the County of Merced's motion in the alternative for reconsideration.

IT IS SO ORDERED.

Dated:   **July 31, 2014**          /s/ Lawrence J. O'Neill
                                             UNITED STATES DISTRICT JUDGE

    3.